CONRAD HABERMAN

*v.*

MARY KAUFER et al.

[Decided September 13, 1905.]

1. Where testatrix, after making certain pecuniary legacies, devised the residue of her estate to complainant, and the personal estate was insufficient to pay such legacies and the debts, complainant took the realty in fee, charged with the payment of the legacies.

2. Evidence *held* insufficient to establish the making of a contract by complainant's parents to give him certain real estate at their death, in consideration for his services in caring for them, so as to entitle him to specific performance after their death.

3. That a son takes care of his father and mother and looks after their business proves no contractual relation, and no implication of an undertaking on the part of the father or mother to whom such service is rendered to pay for them will arise, but proof of express agreement so to do must be shown.

On bill, answer, cross-bill, and answer and proofs.

This bill of complaint is filed by Conrad Haberman, the son of Michael and Caroline Haberman, against his sister, Mary Kaufer, and her husband, and against his brothers, George, Joseph and William Haberman, his nephew, Nicholas Kaufer, and St. John's German Catholic Church, legatees under the will of his mother, Caroline Haberman.

The object of this suit is to compel the specific performance of a contract, which the complainant alleges his father, Michael Haberman, made with him in 1894, to convey to the complainant two tenement-houses in New Brunswick, in which Michael kept a cheap lodging-house. The complainant alleges that he agreed with Michael to serve him and his wife, Caroline (who were old and infirm in health), in the conduct of the lodging-house business for the remainder of their lives, and that Michael agreed,

in consideration thereof, that they, Michael and Caroline, on their death, would leave the lodging-house properties to the complainant in fee.

The complainant alleges that Michael died in December, 1896, testate, and by his will, dated November 30th, 1896, devised all his estate to Caroline in fee, and appointed her sole executrix of his will; that Caroline proved the will on January 12th, 1897; took possession of the lodging-houses, and told the complainant that after her death his agreement, made with Michael, would be carried out in all respects, and the lodging-houses would belong to him, Conrad Haberman.

The complainant further alleges that Caroline died September 14th, 1897, testate, and by her will, dated January 11th, 1897, gave money legacies to her daughter, Mary Kaufer, and to her sons, George, Joseph and William; to her grandson, Nicholas Kaufer, and to St. John's German Catholic Church, amounting in all to $2,000, and the residue of her estate she devised to him, the complainant, Conrad Haberman, whom she appointed sole executor of her said will.

On September 23d, 1897, the complainant, as sole executor of his mother's (Caroline Haberman) will, duly proved it and undertook its execution.

The complainant alleges that he has fully and faithfully performed his part of his above-recited agreement with Michael, continued and consented to by Caroline; that the effect of her will is to charge the lodging-house property with the payment of the legacies, amounting in all to $2,000; that the debts have absorbed the rest of Caroline's estate; that said lodging-house property is so located and in such bad condition that it is difficult to find a purchaser thereof for the price of $2,000; that by his above-named agreement he was to have the said lodging-house property clear of any charge; that Michael and Caroline have, as above shown, violated that agreement, and that the legatees under Caroline's will insist on the raising of their legacies by the sale of said lodging-houses.

The complainant prays that the defendant legatees of Caroline Haberman may be decreed to specifically perform the above-

recited contract; that the lodging-houses may be decreed to belong to the complainant in fee, clear of all claims of the defendants, either as legatees or as heirs-at-law of either Michael or Caroline, and for further relief.

The defendants, except the church, joined in an answer denying in substance every averment of the complainant's bill which either sets up the alleged contract with Michael to convey the lodging-houses or its confirmation by Caroline, and they deny that there was any performance of any such contract by the complainant. They further allege that the complainant, after the death of both Michael and Caroline, never mentioned that there was any such contract, nor pretended to have any right of compensation for such services as are set forth in his bill, until he had unsuccessfully endeavored to raise the money necessary to pay off the defendants' legacies; that in October, 1898, nearly two years after Michael's death, and over a year after the death of Caroline, the complainant conceived the idea of claiming pay for the services mentioned in his bill of complaint, and exhibited to himself, as executor of Caroline's will, a claim therefor against her estate to the amount of $1,700, and against her, as devisee under Michael's will, for $1,600. Both these claims are verified by the oath of the complainant to be "justly due and owing" to him; that the complainant presented these claims to the orphans court of Middlesex county, and petitioned that court, in view of the insufficiency of Caroline's personal estate to pay her debts, to order a sale of her real estate, and obtained an order to show cause, &c.; that exceptions were filed to the account so exhibited, and thereafter the complainant withdrew his application by orders made June 5th, 1899, and on that day filed his bill of complaint in this court, setting up the alleged agreement of Michael to convey said lodging-houses, &c., and asking its specific performance. The defendants insist that the exhibition by the complainant of the above-named claims for money compensation for his alleged services and the proceedings thereon were a conclusive election on his part to be paid in money, and a waiver of any benefit of his alleged contract for a conveyance, &c.

The defendants, by cross-bill against the complainant, Conrad Haberman, and St. John's German Catholic Church, aver that their legacies under Caroline Haberman's will are charged upon said lodging-houses, and they pray that they may be sold to pay those legacies, and for further relief.

The complainant moved to strike out this answer and cross-bill. This was refused. *Haberman* v. *Kaufer, 60 N. J. Eq. (15 Dick.) 271.*

This complainant thereupon voluntarily amended his bill of complaint by inserting therein his own name as defendant, as "executor, &c., of Caroline Haberman, deceased," thus making himself, in a representative capacity, a party to this suit.

The complainant afterwards answered the cross-bill, setting up his alleged contract with Michael for a conveyance as against and superior to the legacies charged under Caroline's will.

The cause came to a hearing on these pleadings.

*Mr. Freeman Woodbridge,* for the complainant.

*Mr. Alan H. Strong,* for the defendants.

GREY, V. C.

The title to the lodging-houses passed from Michael Haberman, by his will, to Caroline Haberman, in fee, in December, 1896. By the next step it passed from Caroline Haberman, by her will, to her son, Conrad Haberman, in fee, in September, 1897. The effect of her bequests of legacies, and the subsequent gift of the residue of her estate to Conrad, charged her lands (passing as residue), among which were the lodging-houses, with the payment of those legacies. *Corwine* v. *Corwine, 24 N. J. Eq. (9 C. E. Gr.) 579; Haberman* v. *Kaufer, 60 N. J. Eq. (15 Dick.) 271.* No title to the lodging-houses is claimed by anyone by descent.

The effort of the complainant in this suit is to release the lodging-houses, title to which is now in him, from the charge of the legacies by establishing his claim that he had a contract with Michael Haberman that he, the complainant, for services to be rendered by him to Michael and Caroline, his father and mother,

should have the lodging-houses in fee, clear of all encumbrances. To accomplish this he asks that this alleged contract shall be established, and that a decree be made that it be specifically performed by the defendant legatees under Caroline's will, releasing the charge of their legacies on the lodging-houses.

The burden is upon the complainant to establish the fact that the contract which he sets up in his bill of complaint was actually made, and that it was obligatory, not only upon Michael and Caroline, but also upon himself.

That the services of caretaking of his father and mother and looking after their business were performed by the complainant proves no contractual relation. Those services are in the law presumed to have been rendered in recognition of family duty and affection. No implication of an undertaking on the part of the father or mother, to whom such services were rendered, to pay for them will arise. Proof of an express agreement to pay for such services must be exhibited which is sufficient to overcome the presumption that they were voluntarily rendered.

The contract to convey lands which the complainant seeks to prove is not in writing, either in whole or in part. The evidence offered presents no definite parol agreement between the parties, except as the complainant's own testimony seeks to give that impression. The effort is to show a contract by various unrelated parol statements made by Michael and Caroline, the sum of which it is contended prove the agreement set up by the complainant.

Of course, a contract to convey lands which is not in writing is obnoxious to the statute of frauds. The complainant endeavors to escape this difficulty by claiming that he has performed his side of the agreement, and that it would be inequitable, and in fact a fraud, if Michael and Caroline should be permitted to receive the benefits of the complainant's performance and yet retain from him the lands they agreed to give him therefor.

The wills made by Michael and Caroline are in effect denials that they had made any such agreement as the complainant now asserts. The complainant accepted both these wills without a

suggestion of protest. He formally proved Caroline's will, as its executor, and by his oath as executor undertook to carry it into effect. He recognized the force of its provisions, and for nearly two years sought to borrow the money necessary to pay the very legacies which he is now trying to defeat. He presented to himself, as Caroline's executor, claims that he swore were "justly due and owing to him" for money compensation for his alleged services, and took legal steps to force their payment in money, not setting up the presently-alleged contract to convey, and asking damages for its breach, but claiming payment in money for services rendered, with no hint that there ever had been such an agreement to convey as is now asserted.

It was only when these efforts to raise the legacies had failed, and the legatees gave signs of action to compel their realization by the sale of the lands, that the complainant brought forward his present claim that in 1894, long before the legacies had been given by his mother's will, his father had contracted to pay for the complainant's care and attention by conveying or devising the lodging-houses to him.

When the complainant's own conduct throws so much doubt upon the existence of such a contract, the testimony of other persons on the subject will be examined with careful scrutiny.

The evidence of other witnesses presented by the complainant in support of his claim is quite voluminous. Almost all of it relates parol declarations of the parents of the complainant, made to casual bystanders, which gratefully recognized the complainant's attentions to his father and mother during their illness, and their inability to care for themselves or their business, and their wish and purpose to reward him. Very little of it tends to show any contractual undertaking by either Michael or Caroline to convey or devise the lands in question to the complainant in consideration of the complainant's agreement to serve them. One or two witnesses, who are closely associated with and dependent upon the complainant, did phrase their testimony in a way that suggests a contract. The manner of these witnesses in giving their testimony did not impress me with their truthfulness. Most of the witnesses by whom the complainant sought

to prove admissions by Michael and Caroline that they had contracted to convey the lodging-houses to the complainant testified to language which indicated that Michael and Caroline had a sense of freedom to dispose of their property in recognition of kindness rendered which was quite inconsistent with a consciousness that they were bound to convey or devise it to the complainant by a contract which they were obliged to perform.

None of the supposed admissions defines the whole contract. None shows that the complainant contracted with Michael and Caroline to render the alleged services. They are evidently narrations of passing allusions by Michael and Caroline to the complainant's care of them, and of their desire and purpose to reward him. Such evidence does not prove a contract to convey lands with that certainty which ought to be before any court which is asked to decree the specific performance. The case presented closely resembles in principle that of *Wolfinger* v. *McFarland,* 67 *N. J. Eq.* 687.

On the whole of the proofs I am satisfied that the complainant in fact never had any such contract, and that his present claim is the result of his discovery that his father and mother had, to several people, spoken appreciatively of his services to them in their old age, and of their gratitude and intention to reward him. This his mother, in all probability, believed she was doing by her gift to him of the residue of her estate.

The complainant has failed to present evidence which sufficiently proves the contract alleged. His bill should be dismissed, with costs.

This result being reached, I have not found it to be necessary to consider the numerous points (wholly dependent on this primary one) which the complainant has discussed in his elaborate brief.

The facts necessary to sustain the cross-bill of the defendants are substantially undisputed. The principles of law which justify a decree in favor of the cross-bill prayer have already been declared in the previous judgment of *Haberman* v. *Kaufer,* 60 *N. J. Eq.* (*15 Dick.*) 271. Such a decree should be made.

A decree will be advised according to the views above expressed.