## THE PATERSON GENERAL HOSPITAL ASSOCIATION

*v.*

## JACOB H. BLAUVELT, executor, &c., et al.

[Decided April 6th, 1907.]

1. Where a testator follows bequests of pecuniary legacies with a general residuary clause, the legacies are charged upon the entire residuary estate, real and personal, and remain so charged until paid, the lien upon the realty being not contingent upon the insufficiency of the personalty at the testator's death or at the final accounting, and it being immaterial that the legacies fail of payment out of the personalty because it has been wasted, embezzled, misappropriated or destroyed.

2. A legatee was not barred by laches in 1906 from suing to enforce its lien upon the residuary realty, where testatrix 'died May 6th, 1892, and

January 5th, 1899, the legatee obtained a decree requiring the executor to pay the legacy and he refused to pay it on the ground he had no assets in his possession.

3. A presumption of the payment of a legacy does not arise until after twenty years from the accrual of the right to it.

Heard on demurrer to bill.

Hannah Grundy died on the 6th day of May, 1892. By her will, which was duly probated in the orphans court of Passaic county, she bequeathed general pecuniary legacies aggregating $12,400, and then gave, devised and bequeathed all the rest, residue and remainder of her estate, real and personal, wheresoever situate, or of whatsoever the same might consist, to her cousin, John Clough, and appointed Jacob H. Blauvelt sole executor.

Among those to whom pecuniary legacies were bequeathed was the complainant, whose legacy was $4,000.

The will was admitted to probate, and letters testamentary were issued to Blauvelt, the executor.

The testatrix died possessed of personal property and real estate, the inventory of the personal property amounting to $15,414.35. On the 31st day of December, 1896, the executor, by his final account duly allowed by the orphans court of Passaic county, showed that he had paid all of the legacies bequeathed in the said will except the sum of $1,850 to the complainant, $360 to another legatee and $100 to another, and the said account also showed that the executor had a balance in his hands of the personal estate amounting to $2,638.51.

After this time the executor made a payment to the complainant of $200, leaving a balance still due to it of $1,650.

On the 19th of December, 1898, the complainant began proceedings in the orphans court aforesaid against the executor which resulted, on the 5th of January, 1899, in a decree that the executor pay to the complainant, upon its tendering a proper refunding bond, the sum above mentioned remaining due upon its legacy, whereupon it tendered a proper refunding bond, and the said executor refused to pay, stating that he had no assets of the estate in his possession.

The bill charges that the executor, at the time of filing the final account on the 31st day of December, 1896, had wasted the estate of Hannah Grundy, and had misappropriated the same; that he was and is now insolvent and of no financial responsibility whatever, and that the complainant has exhausted all means at its command to obtain the balance due upon its legacy.

The bill also charges that at various dates from the 15th of June, 1895, to the 29th of June, 1906, the residuary legatee, John Clough, conveyed certain portions of the real estate, and agreed to convey certain other portions thereof to various persons.

The bill charges that the legacy of the complainant is a charge upon the real estate of the decedent, and prays that the same may be so decreed, and that the defendants be decreed to pay the amount due thereon, or that so much of the real estate as may be necessary may be sold to raise and pay the same.

The executor, the residuary devisee, and each of the parties to whom real estate was conveyed by the residuary devisee, and the other legatees who have not received payment in full, are made defendants.

John Clough, the residuary devisee, files the demurrer. His grounds may be briefly summarized as follows:

*First.* That the complainant is in laches in attempting, at this late date, to charge the real estate of the defendant acquired as residuary devisee.

*Second.* That there was sufficient personal estate at the time of the death of the testatrix to pay all of the legacies, together with the costs of administration, hence there is no charge upon the real estate acquired by the defendant under the will.

*Third.* That, under the will, there was no intention to charge the real estate acquired by the demurrant under the residuary clause thereof.

*Fourth.* That if the complainant ever had a lien, its delay in enforcing the same has resulted in its losing it.

*Fifth.* That the complainant has not, on the face of its bill, justified its laches.

*Mr. Robert Williams* and *Mr. Gustav A. Hunziker,* for the complainant.

*Mr. George P. Rust* and *Mr. Thomas P. Costello,* for John Clough, demurrant.

GARRISON, V. C. (after stating facts).

There is no doubt that where a testator bequeaths pecuniary legacies and follows this with a general residuary clause, the legacies are charged upon the entire residuary estate, real as well as personal. This matter was set at rest in this state by the decision of the court of errors and appeals in the case of *Corwine* v. *Corwine, 24 N. J. Eq. (9 C. E. Gr.) 579 (1874)*. The rule as there stated was adopted from *Hawk. Wills,* and is in the following language (at *p. 294*) :

> "It has been said that a testator generally intends the legacies given by his will to be a charge on his residuary real estate, as well as on his personal estate, but (in the absence of an express charge) they are held to be so only when the residuary real and personal  *  *  *  estate are given together  *  *  *  it being a rule of construction that if legacies are given generally, and the residue of the real and personal estate is afterwards given in one mass, the legacies are a charge on the residuary real, as well as the personal, estate."

In the case of *Johnson* v. *Poulson, 32 N. J. Eq. (5 Stew.) 390 (Court of Errors and Appeals, 1880),* the rule in *Corwine* v. *Corwine, supra,* is explained, and is shown to apply only to those cases in which there is no evidence of contrary intention appearing in the will. That is to say, a will giving legacies generally, and following that with a residuary clause blending all of the property, real and personal, therein, will be construed as charging the legacies on the blended mass of real and personal property left by the testator. But if there is anything in the will which shows a contrary intent, then the charge does not necessarily result from a residuary clause of the character mentioned.

In the case at bar there is nothing in the will to take it out of the plain rule laid down in *Corwine* v. *Corwine, supra,* and so frequently applied since that time. *Brown* v. *Brown, 31 N. J. Eq. (4 Stew.) 422 (Chancellor Runyon, 1879)* ; *Miller* v. *Sandford, 31 N. J. Eq. (4 Stew.) 427 (Chancellor Runyon, 1879)* ; *Adams* v. *Beideman, 33 N. J. Eq. (6 Stew.) 77 (Chancellor Runyon, 1880)* ; *Cook* v. *Lanning, 40 N. J. Eq. (13 Stew.) 369*

*(Chancellor Runyon, 1885)* ; *Langstroth* v. *Golding, 41 N. J. Eq. (14 Stew.) 49 (Chancellor Runyon, 1886)* ; *American Dramatic Fund Association* v. *Lett, 42 N. J. Eq. (15 Stew.) 43 (Chancellor Runyon, 1886)* ; *Turner* v. *Gibb, 48 N. J. Eq. (3 Dick.) 526 (Vice-Chancellor Green, 1891)* ; *Congregational Church* v. *Benedict, 59 N. J. Eq. (14 Dick.) 136 (Vice-Chancellor Stevens, 1899)* ; *affirmed, 62 N. J. Eq. (17 Dick.) 812* ; *Horton* v. *Howell, 56 Atl. Rep. 702 (Vice-Chancellor Stevens, 1903)*.

Since it is the rule that the personal estate of a decedent is the primary fund for the payment of debts and legacies, the question arises, in applying the doctrine of *Corwine* v. *Corwine, supra,* whether there is any charge upon the residuary real estate if there is sufficient personal property to pay the debts and legacies. There is no doubt whatever that, as between the residuary devisee and a legatee, the legatee can be compelled by the devisee to proceed to obtain his legacy from the personal estate before resorting to the real estate. The question, however, still remains whether, if the legatee does proceed to obtain payment first from the personal estate and fails, although there was at the time of the death of the testator or of the final accounting ample personal estate to pay debts and legacies, the lien upon the real estate exists, or whether such lien only arises in the event that there was not sufficient personal property applicable to the payment of legacies.

Concisely stated, I think the question is whether, under the doctrine being considered, the proper holding is that there is a lien or charge upon the residuary real estate, or that there is such a lien or charge only if there is not sufficient personal estate at the time of the death of the testator or final accounting to pay the legacies.

It seems to me plain that if the first suggestion is adopted as a correct statement of the rule, then the lien or charge must remain until paid, and it is utterly immaterial whether there was sufficient personal property at the time of the death of the testator or of the final accounting, the only importance of that question being that such personal property must be resorted to by the legatee before enforcing his charge upon the real estate.

On the other hand, if the latter statement of the rule is the correct one, then if there was sufficient personal property at the death or at the final accounting, there is no charge. This proceeds upon the reasoning that the testator only intended to charge his real estate if he had not sufficient personal property to pay the legacies.

I am of opinion that, under the reasoning and precedents, a will of the kind here under consideration charges the legacies upon the land, and that they remain a charge until paid. I do not think that the proper rule is that the so-called charge or lien is a contingent one which only arises in the event that there was insufficient personal property at the time of the testator's death or at the final accounting. The leading case upon this subject is *Greville* v. *Browne, 7 H. L. Cas. 690 (1859)*. In that case there was a pecuniary legacy, a general residuary clause, and another person than the residuary devisee was the executor. Lord-Chancellor Campbell (at *p. 696*) said: "For nearly a century and a half this rule has been laid down and acted upon, that if there is a general gift of legacies, and then the testator gives the rest and residue of his property, real and personal, the legacies are to come out of the realty. It is considered that the whole is one mass; that part of that mass is represented by legacies, and that what is afterwards given is given *minus* what has been before given, and therefore given subject to the prior gift." He further quotes with approval the language of Vice-Chancellor Page-Wood, who said: "I feel that I should be only introducing a useless and mischievous distinction if I held the legacy not to be a charge, the principle of the decision being in truth the same in the case of legacies as in that of debts."

Lord Cranworth (at *p. 699*) said: "The distinction that is suggested between real and personal property is an artificial part of the case," and Lord Kingsdown (at *p. 705*), after holding that "the rest" must be construed to mean "that which remains after what has previously been given is withdrawn," proceeds to say: "The distinction which is relied upon  *  *  *  is, I think, a distinction which is founded, not upon general principles, or upon the ordinary sense of mankind, but entirely upon the technical rules of the English law."

It must be recalled that by reason of the feudal system and the inability to transfer lands by will there grew up an entirely arbitrary distinction with respect to property. As has just been pointed out by the judges above quoted, there is no real distinction in the mind of the layman between one kind of his property and another kind. He has property. He desires to dispose of it by will. To the lay mind it does not occur that any distinction will be applied, and hence, when he gives some of the property in the form of money bequests, and what is left of his property in a mass to another, he undoubtedly means that all of his property shall first be used (after payment of his debts) to pay the legacies he has given, and that only what is left shall go to the one who is to have the residuum.

It is an entirely artificial thing that the personal property is held to be the primary fund for the payment of debts and legacies, and while it is perfectly true that it is so held, I think it entirely improper to extend this doctrine so as to hold that if, for any reason, the personal property is diverted from and does not reach the legatee, he thereby loses his legacy in a case where the testator left ample property to pay the named pecuniary legacies.

It will be observed that in the leading case just cited there is no suggestion that the charge upon the realty arises in the event of a deficiency of personal property. The court, as has been demonstrated, wiped out any distinction in such cases between the two classes of property, and held squarely and without qualification that the legacies were a charge upon the realty. This case was cited in our leading case of *Corwine* v. *Corwine, supra,* and (at *p. 584* thereof) is shown to be the basis of the modern formulation of the doctrine.

The difficulty which now confronts us has arisen, in my view, because the courts, in stating the undoubted rule that the personal property is the primary fund for the payment of legacies, have failed to clearly show that this relates merely to priority or precedence in the marshaling of assets, and does not affect the existence or continuance of the lien. Because the residuary devisee has the undoubted right to have the personal property of the decedent, after the payment of his debts and administration

expenses applied to the satisfaction of pecuniary legacies, the courts have often unqualifiedly stated that, under the doctrine being dealt with, the legacies are a charge on the land if there be an insufficiency of personal estate. This is undoubtedly the rule, but it is not the whole rule, and as thus stated leads to the incorrect inference to which I have alluded. If from this statement of the principle it is inferred that there is only a charge upon the real estate in the event of there being an insufficiency of personal estate, then such inference is unwarranted and the principle is not properly applied.

In my view, as between the legatee and "the estate," the latter is charged as a whole, irrespective of any distinction as to different kinds of property, and remains charged until the legacy is paid. In the matter of marshaling of assets, or of determining the rights as between the residuary devisee and the legatee, the latter undoubtedly can be compelled to exhaust his remedy against the personal property before enforcing the lien which he has upon the real estate. Many of the cases above cited as following *Corwine* v. *Corwine, supra,* refer in the way in which I have above indicated to the necessity of there being an insufficiency of personal assets before the doctrine contended for will be applied. But *Greville* v. *Browne, supra,* the leading authority above cited, does not, as heretofore shown, refer to the necessity of any such insufficiency to create the lien, and the following cases in our own courts have stated the doctrine without any such qualification: *American Dramatic Fund Association* v. *Lett, supra* (at *p. 44*) ; *Stevens* v. *Flower, 46 N. J. Eq. (1 Dick.) 340 (Chancellor McGill, 1890)* ; *First Baptist Church* v. *Syms, 51 N. J. Eq. (6 Dick.) 363 (Chancellor McGill, 1893)* ; *Carter* v. *Gray, 58 N. J. Eq. (13 Dick.) 411 (Vice-Chancellor Grey, 1899)* ; *Vernon* v. *Mabbett, 58 Atl. Rep. 298 (Vice-Chancellor Grey, 1904)* ; *Haberman* v. *Kaufer, 61 Atl. Rep. 976 (Vice-Chancellor Grey, 1905)* ; see, also, *Wyckoff* v. *Wyckoff, 48 N. J. Eq. (3 Dick.) 113 (Vice-Chancellor Pitney, 1881)*. While the vice-chancellor in that case dealt only with the doctrine which concerned land devised to a person who is directed to pay a legacy, and held that in such case the deficiency of personal assets was not considered, he cites authorities which show that the same

ruling is made in cases where the charge is upon a residuary estate, and is not confined to cases where the land is devised with a specific direction to pay. In *Greville* v. *Browne, supra,* one of the authorities cited by the vice-chancellor, and which I have heretofore alluded to, Lord Cranworth, in commenting upon an argument and an inference from the case of *Awbrey* v. *Middleton,* points out that the circumstance that the legacies were directed to be paid by the executor, and that the gift of the general residue was to the executor, did not control the decision, but that the decision proceeded upon the general principle that the residue was charged with the legacy, and therefore the legacy must be paid without regard to whether it came from personal property or real estate.

If, then, I am correct in my understanding of the principle, this will, as above stated, created a lien or charge upon the real estate, and the authorities all hold that under such circumstances nothing but payment to the legatee extinguishes the lien. *Quick* v. *Quick, 1 N. J. Eq. (Sax.) 4 (Chancellor Vroom, 1830)* ; *Terhune* v. *Colton, 10 N. J. Eq. (2 Stock.) 21 (Chancellor Williamson, 1834)* ; *Grode* v. *Van Valen, 25 N. J. Eq. (10 C. E. Gr.)* (at *p. 97*) *(Chancellor Runyon, 1874).* See, also, collection of cases in other jurisdictions. *49 Am. Dig. col. 3254 § 2122.*

Even in cases where the charge was upon the real estate, "if the personal property should prove insufficient to pay," the Irish courts have held that the lien existed in cases where the executor embezzled sufficient personal property to have paid the legacies. Although in the English court of chancery, under similar circumstances, there is a different holding. *In re Massy, 14 Ir. Ch. 355 (1863)* ; *McCarthy* v. *McCartie, 1 Ir. Rep. 86 (1897)* ; *Richardson* v. *Morton, L. R. 13 Eq. 123 (1871).*

In the case of *Sims* v. *Sims, 10 N. J. Eq. (2 Stock.) 158* (at *p. 161*) *(Chancellor Williamson, 1854),* there is a *dictum* that if the executor embezzles the money of the estate the legatee loses, and the land is released. It will be found in analyzing that case— *first,* that the chancellor held that under the will therein considered there was no charge upon the real estate, so that what he had to say concerning the effect of the embezzlement of the executor in a case where there was a charge was *dictum,* and

*secondly,* that the authorities which he cites for that *dictum* are those in which land charged with the payment of legacies was once resorted to and the money raised upon it and paid to the executor for the legatee, and the misconduct or embezzlement of the executor was then attributable to the legatee, and not to the devisee, whose land had once suffered the burden. Undoubtedly the cases hold that if there is a charge, and the amount of the charge is obtained from the land, that land shall not again be subjected to the same charge. But I do not think that this in any way militates against the principle that if the land is subject to the charge and has not borne it, it is not exempt therefrom because the executor did have funds in his hands arising from the personal estate which should have been devoted to paying the legacy.

In the case at bar there was sufficient personal property left by the testatrix, if properly and honestly administered upon, to have paid the legacies in question. This money was wasted, misappropriated or embezzled by the executor. The legatee (the complainant) has pursued the executor, and has, it pleads, exhausted all the remedies at its command to obtain payment of its legacy, and has failed to secure such payment, and cannot secure it because the executor is insolvent and there is no personal property of the decedent now in existence to be applied to this legacy.

In the case of *Horton* v. *Howell, 56 Atl. Rep. 702 (1903),* Vice-Chancellor Stevens holds that, as between the residuary devisee and the legatee, the net amount shown to be in the hands of the executor from his administration of the personal property is all that the devisee can require as applicable to the legacy. In the course of his reasoning it will be found that he holds that the intention of the testator must be held to be to prefer the legatee as against the residuary devisee, and he points out that extraordinary expenses of litigation carried on by the executor are not chargeable as against the legatee in relief of the land devised to the residuary devisee, because the testator could not contemplate that any such expenses should reduce the amount payable to the legatee upon his legacy. By parity of reasoning I think it may fairly be said in the case in hand that the testatrix

could not contemplate that an embezzlement of her personal property by her executor should result in a loss to the legatee while there was property, whether real or personal, coming to the residuary devisee. In my view, the whole matter is settled by the holding (which I find to be the correct one) that, under the language of this will, the legacies were charged upon the property of the testatrix, and that until they are paid they remain a charge, and therefore it is immaterial whether they fail of payment out of the personal property because it was wasted, embezzled, misappropriated, or destroyed by an act of God. If we suppose a case in which ample personal property in the shape of money was left in a bank which failed, or was left in some form which was destructible, and that it was, without negligence or fault, and by an act of God, destroyed, we are then to consider whether the testator intended that the legatee should lose and the residuary devisee should be exempt from loss under such circumstances. I fail to see how it can be reasonable to hold that the testator had any such intention. He names his beneficiaries and the amounts he desires them to receive, and the rest of his property, without artificial distinction between the kinds, he leaves to another. I think the only reasonable conclusion is that those to whom he has given pecuniary legacies have a charge upon all the property, and that until they are paid such charge remains.

This decision disposes also of the contention of the defendant that there was laches. It would be equally ineffectual, in my view, if the objection came from those who acquired title from the residuary devisee. *Grode* v. *Van Valen, supra.* But undoubtedly, on behalf of the residuary devisee himself (who is the only demurrant here), there is no basis for a contention that the complainant is barred by laches from enforcing its lien upon the residuary realty. A presumption of payment of a legacy does not arise until after the expiration of twenty years from the time of accrual of the right to it. *Coleman's Executors* v. *Howell, 16 Atl. Rep. 202 (Vice-Chancellor Bird, 1888)* ; *Congregational Church* v. *Benedict, supra* (at *p. 140*).

I will advise a decree overruling the demurrer, with costs.